UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case Nos. 1:01-cr-156-JMS-TAB-01, 1:02-cr-14-JMS-MJD-02 |
| v. | ORDER ON MOTIONS FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) |
| DANIEL P. SCHOONOVER | (COMPASSIONATE RELEASE) |

Upon motions of ☒ the defendant ☐ the Director of the Bureau of Prisons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission,

IT IS ORDERED that the motions are:

☒ DENIED.

☐ DENIED WITHOUT PREJUDICE.

☐ OTHER:

☒ FACTORS CONSIDERED: See attached opinion.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 1:01-cr-00156-JMS-TAB-01 |
| v. ) | No. 1:02-cr-00014-JMS-MJD-02 |
| ) | |
| DANIEL P. SCHOONOVER, ) | |
| ) | |
| Defendant. ) | |

## ORDER

In each of the above-captioned cases, Defendant Daniel Schoonover has filed a motion seeking compassionate release under § 603 of the First Step Act of 2018, which is codified at 18 U.S.C. § 3582(c)(1)(A). Dkt. 1 in Case No. 1:01-cr-156-JMS-TAB-01; Dkt. 1 in Case No. 1:02-cr-14-JMS-MJD-02.[1] Mr. Schoonover seeks immediate release from incarceration. Dkt. 6 at 1. For the reasons explained below, his motions are **DENIED**.

**I.    Background**

Over the course of a month in 2001, Mr. Schoonover and his brother (Matthew Schoonover) committed three armed bank robberies.[2] Dkt. 21 at 4–7. During two of them, Mr. Schoonover brandished a gun and threatened tellers. *Id.* After the last robbery, Mr. Schoonover and his brother led police on a chase. *Id.* Their car got stuck in a cornfield, so they got out and ran. *Id.* They approached a house and tried to buy a car with the cash they had stolen, but the person

---

[1] Mr. Schoonover made identical filings in each of the above-captioned cases. For ease of reference, the Court cites only to docket entries in Case No. 1:01-cr-156-JMS-TAB-01 for the remainder of this Order.
[2] The facts in this paragraph are drawn from the Presentence Investigation Report. The United States relied on this statement of facts in responding to Mr. Schoonover's motions for compassionate release, and Mr. Schoonover did not object to its accuracy in his reply.

2

they approached called the police. *Id.* When the police came, the brothers were in the car they had tried to buy. *Id.* Mr. Schoonover accelerated and tried to run over the police officers. *Id.* Police shot out the tires of the car, so the brothers exited the car and ran. *Id.* The brothers were then, separated, and Mr. Schoonover broke into a house and stole some clothes. *Id.* He also called a family member to pick him up. *Id.* The family member picked him up and brought him home but also called the police. *Id.*

Mr. Schoonover ultimately signed a binding plea deal and agreed to plead guilty to two counts of armed bank robbery in violation of 18 U.S.C. § 2113(d) and one count of brandishing a firearm during the commission of a federal felony offense, in violation of 18 U.S.C. § 924(c). Dkt. 21 at 3–4. In accordance with the plea agreement, Mr. Schoonover received a sentence of 300 months of imprisonment, representing concurrent 216-month sentences for the two armed robbery counts and a consecutive sentence of 84 months for the § 924 count.

Mr. Schoonover has been in custody since July 2001—nearly 20 years. The BOP lists Mr. Schoonover's anticipated release date (with good-time credits included) as March 14, 2023. That is, with good-time credits included, Mr. Schoonover has served approximately 90% of his sentence.

Mr. Schoonover is currently 44 years old. He is currently incarcerated at FCI Beckley. As of May 6, 2021, the BOP reports that one inmate and one staff member at FCI Beckley have active cases of COVID-19; it also reports that 216 inmates at FCI Beckley have recovered from COVID-19. *See* https://www.bop.gov/coronavirus/ (last visited May 6, 2021). The BOP also reports that 191 staff members and 936 inmates at FCI Beckley have been fully inoculated against COVID-19. *Id.*

Mr. Schoonover filed pro se motions for compassionate release in the above-captioned cases. Dkt. 1. Appointed counsel filed a supporting memorandum, dkt. 6, the United States responded in opposition, dkt. 13, and Mr. Schoonover replied, dkt. 18. At the Court's direction, the United States then supplemented its response and informed the Court that Mr. Schoonover has been fully inoculated against COVID-19. Dkts. 45, 47. Mr. Schoonover did not reply, and the time for doing so has passed. Thus, his motions for compassionate release are ripe for review.

## II.  Discussion

Mr. Schoonover seeks immediate release based on "extraordinary and compelling reasons" as set forth in 18 U.S.C. § 3582(c)(1)(A)(i). Dkt. 6. Specifically, he contends that his underlying medical condition of chronic kidney disease puts him at increased risk of experiencing severe symptoms if he contracts COVID-19 and that the BOP cannot protect him from contracting the virus, thereby creating extraordinary and compelling reasons warranting release. *Id.* He also argues that his need to care for his aging grandparents and parents amounts to an extraordinary and compelling reason warranting release. *Id.*[3] He also argues that he would not be a danger to the community if released and that the sentencing factors in 18 U.S.C. § 3553(a) favor release. In response, the United States argues that Mr. Schoonover has not established extraordinary and compelling reasons for release and that the factors under § 3553(a) do not favor release. Dkt. 13.

The general rule is that sentences imposed in federal criminal cases are final and may not be modified. 18 U.S.C. § 3582(c). Under one exception to this rule, a court may reduce a sentence

---

[3] In the supporting memorandum, Mr. Schoonover's counsel also mentioned that the First Step Act "changed how the crimes committed by Mr. Schoonover are viewed in the modern era." Dkt. 6 at 1. He did not further explain or develop this argument, and the Court considers it waived. Regardless, to the extent Mr. Schoonover is arguing that the First Step Act's changes to the so-called "stacking" provisions of § 924 constitute an extraordinary and compelling reason warranting release, those changes are not applicable to Mr. Schoonover. He was convicted of only one § 924(c) offense and was not subjected to the "stacking" penalties of the former § 924(c).

upon finding there are "extraordinary and compelling reasons" that warrant a reduction. 18 U.S.C. § 3582(c)(1)(A)(i). Before the First Step Act, only the Director of the Bureau of Prisons could file a motion for a reduction based on "extraordinary and compelling reasons." Now, a defendant is also permitted to file such a motion after exhausting administrative remedies. *See* First Step Act of 2018, Pub. L.N. 115-391, 132 Stat. 5194, 5239 (2018). The amended version of the statute states:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier,[4] may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>> (i) extraordinary and compelling reasons warrant such a reduction; or
>>
>> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

---

[4] The United States does not argue that Mr. Schoonover failed to exhaust administrative remedies as required by § 3582(c)(1)(A). *See* dkt. 13 at 10 n.7. Thus, the Court considers any exhaustion defense waived. *See United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020) (holding that exhaustion requirement under § 3582(c)(1)(A) is not jurisdictional and that the government loses the benefits of the defense if it fails to properly invoke it).

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). It directed that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.* Before passage of the First Step Act, the Sentencing Commission promulgated a policy statement regarding compassionate release under § 3582(c). U.S.S.G. § 1B1.13.

Section 1B1.13 sets forth the following considerations. First, whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, consideration of the sentencing factors in 18 U.S.C. § 3553(a), "to the extent they are applicable." U.S.S.G. § 1B1.13.

As to the first consideration, Subsections (A)-(C) of Application Note 1 to § 1B1.13 identify three specific "reasons" that qualify as "extraordinary and compelling": (A) terminal illness diagnoses or serious conditions from which a defendant is unlikely to recover and which "substantially diminish[]" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence, whichever is less; or (C) certain family circumstances (the death or incapacitation of the caregiver of the defendant's minor child or the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner). U.S.S.G. § 1B1.13, Application Note 1(A)–(C). Subsection (D) adds a catchall provision for "extraordinary and compelling reason[s] other than, or in combination with, the

reasons described in subdivisions (A) through (C)," "[a]s determined by the Director of the Bureau of Prisons." *Id.*, Application Note 1(D).

The policy statement in § 1B1.13 addresses only motions from the Director of the BOP. *Id.* ("Upon the motion of Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . "). It has not been updated since the First Step Act amended § 3582(c)(1)(A) to address motions that are filed by prisoners. As a result, the Sentencing Commission has not yet issued a policy statement "applicable" to motions filed by prisoners. *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020). And, in the absence of an applicable policy statement, the portion of § 3582(c)(1)(A) requiring that a reduction be "consistent with the applicable policy statements issued by the Sentencing Commission" does not curtail a district court judge's discretion. *Id.* at 1180. Nonetheless, the Commission's analysis in § 1B1.13 can guide a court's discretion without being conclusive. *Id.* As to motions brought under the "catchall" provision in Subsection (D), district judges should give the Director of the BOP's analysis substantial weight (if he has provided such an analysis), even though those views are not controlling. *Id.*

Accordingly, the Court evaluates motions brought under the "extraordinary and compelling" reasons prong of § 3582(c)(1)(A) with due regard for the guidance provided in § 1B1.13 by deciding: (1) whether a defendant has presented an extraordinary and compelling reason warranting a sentence reduction; (2) whether the defendant presents a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) whether the applicable sentencing factors in § 3553(a) favor granting the motion.

Mr. Schoonover does not suggest that Subsections (A)-(C) of Application Note 1 to § 1B1.13 provide him with an extraordinary and compelling reason warranting release. Instead, he

asks the Court to exercise its broad discretion to find an extraordinary and compelling reason warranting release in this case.[5]

Mr. Schoonover claims that extraordinary and compelling reasons warrant a sentence reduction in this case because he has chronic kidney disease, which increases his risk of experiencing severe COVID-19 symptoms. Dkt. 6. The CDC (Centers for Disease Control) recognizes that having chronic kidney disease of any stage can make you more likely to get severely ill from COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited May 6, 2021). However, Mr. Schoonover has now been fully inoculated against COVID-19. *See* dkt. 47-1 at 12 (showing that Mr. Schoonover received first dose of Pfizer COVID-19 vaccine on March 2, 2021, and second of two doses of Pfizer COVID-19 vaccine on March 23, 2021). Although no vaccine is perfect, the CDC has recognized that vaccines currently approved for use in the United States are effective at preventing COVID-19 and that large-scale clinical trials found that COVID-19 vaccination prevented most people from getting COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html (last visited May 6, 2021). In these circumstances, the Court declines to exercise its discretion to find that the risk Mr. Schoonover faces from the COVID-pandemic represents an extraordinary and compelling reason warranting a sentence reduction. *See United States v. Gaskins*, No. 1:16-cr-249-JMS-MJD-3, dkt. 274 at 10 (S.D. Ind. Feb. 16, 2021) (declining to find extraordinary and compelling circumstances based on risk from COVID-19 pandemic where defendant had received both doses of Pfizer COVID-19 vaccine, even

---

[5] In keeping with the Seventh Circuit's instruction in *Gunn*, 980 F.3d at 1180–81, the Court has considered the rationale provided by Mr. Schoonover's warden in denying Mr. Schoonover's administrative request for relief. Dkt. 18-2. Mr. Schoonover's warden issued his decision before Mr. Schoonover was inoculated against COVID-19. *See id*. Thus, the warden's decision provides little guidance to the Court's analysis.

though she had conditions that could increase her risk of experiencing severe symptoms from the virus).

Mr. Schoonover's desire to provide care for his parents and grandparents also does not constitute an extraordinary and compelling reason warranting a sentence reduction. Mr. Schoonover submitted a letter from his mother stating that she and Mr. Schoonover's father could use help with certain household repairs and that Mr. Schoonover's grandparents could benefit from Mr. Schoonover's help, *see* dkt. 1-1 at 5–6, and a letter from his grandparents stating that he could help them with work that needs to be done to their house, *see id.* at 7. While the Court understands and applauds Mr. Schoonover's desire to help his parents and grandparents, he has not submitted any evidence showing that his parents or grandparents are incapacitated and lack other available caregivers. Regardless, many inmates have elderly or ill parents or grandparents whom they would like to help. As a result, the Court has consistently found that the desire to care for an ailing or elderly family member is not an extraordinary and compelling reason warranting a sentence reduction. *Cf. See United States v. Trice*, No. 1:13-cr-222-TWP-DML-1, Dkt. 114 at 5 (S.D. Ind. Aug. 4, 2020) (collecting cases about defendants requesting compassionate release to care for elderly or ill parent); *United States v. Jackson*, No. 1:18-cr-314-RLY-MJD-1, dkt. 33 (S.D. Ind. Aug. 12, 2020) (same); *United States v. Crandle*, 2020 WL 2188865, at *3 & n.27 (M.D. La. May 6, 2020) (same); *United States v. Ingram*, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019) ("Many, if not all inmates, have aging and sick parents. Such circumstance is not extraordinary.").

Even if Mr. Schoonover had shown an extraordinary and compelling reason warranting a sentence reduction, however, his motion must be denied because the Court finds that the applicable § 3553(a) sentencing factors weigh against granting Mr. Schoonover's request for compassionate release. The factors are: (1) the nature and circumstances of the offense and the history and

characteristics of the defendant; (2) the need for the sentence imposed (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (b) to afford adequate deterrence to criminal conduct; (c) to protect the public from further crimes of the defendant; and (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the defendant's crimes; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a). The Court will address those factors that are applicable to Mr. Schoonover's motion.

      Here, Mr. Schoonover suffers from at least one medical condition that increases his risk of experiencing severe symptoms if he contracts COVID-19. While FCI Beckley experienced a significant outbreak of COVID-19, the BOP's efforts to control the virus among the inmate population appear to be having some success, and only one inmate at FCI Beckley currently suffers from an active case of COVID-19. Moreover, Mr. Schoonover has now been fully inoculated against COVID-19, thereby reducing the possibility that Mr. Schoonover will be infected. That said, the nature of prisons means that the virus can spread quickly and that inmates have little ability to protect themselves from the virus. In short, the Court is aware of the risk that Mr. Schoonover faces from COVID-19 and has given it appropriate weight in its consideration of the § 3553(a) factors.

      Also weighing in Mr. Schoonover's favor, he has served more than 20 years for his crimes, which represents a very significant sanction. He has made good use of those years of incarceration.

He has earned his GED, completed other classes, and worked during his incarceration. Dkt. 6-3. During his first 15 years of incarceration, Mr. Schoonover incurred several disciplinary write-ups, but he has had clean conduct since then, a change that appears to coincide with his ordination as a minister. *See* dkt. 13-7; dkt. 1-1. The Court also recognizes that Mr. Schoonover's childhood was extremely troubled and traumatic and that he appears to have suffered from a serious substance abuse problem at the time of his crimes. Dkt. 21 at 15–17. During his incarceration, he has completed the non-residential drug treatment program. Dkt. 6-3. Mr. Schoonover has also submitted letters of support from his mother and grandparents, suggesting that his family could provide some stability if he were released. Dkt. 1-1 at 5–8. Finally, the Court acknowledges that, while Mr. Schoonover has some prior convictions, there is nothing else in his criminal history of equal magnitude to the crimes he committed in these cases. Dkt. 21 at 12–13.

Nonetheless, other facts weigh heavily against Mr. Schoonover's request for release. Specifically, the nature and circumstances of Mr. Schoonover's offenses are extremely serious. He committed three armed robberies and brandished a gun in two of them, terrifying and endangering the people in the banks at the time. *See, e.g.*, dkt. 21 at 7 (victim impact statement). He and his brother led law enforcement on an extended chase, during which he tried to run over the officers pursuing him. Such crimes deserve a serious sentence. In addition, given Mr. Schoonover's history of substance abuse, the Court is troubled that he apparently expressed "no interest" in the BOP's drug abuse program in 2013. *See* dkt. 13-1 at 1. And the Court cannot overlook that Mr. Schoonover agreed to a binding plea agreement, in exchange for the government's forbearance on bringing other charges against him with respect to the circumstances surrounding the matters charged in both of the above-captioned cases.  The Court infers a possible uncharged count could

have been brought under18 U.S.C. § 924(c) and exposed Mr. Schoonover to an additional mandatory consecutive term of imprisonment.

Furthermore, the BOP considers Mr. Schoonover to be at high risk for recidivism. Dkt. 13-1. Defendants who commit robberies are more likely to recidivate than defendants who commit other violent felonies. United States Sentencing Commission, *Recidivism Among Federal Violent Offenders* 16, 27 (Jan. 2019) ("Violent offenders recidivated at a higher rate than non-violent offenders in every age group at the time of release from prison, and the gap between the two groups widens as age at release increases . . . . Robbery offenders recidivated at a higher rate, more quickly, and for more serious offenses than did the other . . . violent instant offenders.").[6] This pattern holds true even as defendants age: "Recidivism rates for robbery offenders increased until reaching age 50 at the time of release (rising from 66.2% for those released under the age of 26 to 72.2% for those released at age 41 through 50."). *Id.* at 27. Although Mr. Schoonover is making strides at reforming himself, his risk of recidivism remains high.

Finally, the Court has consistently denied motions from compassionate release from defendants who were convicted of armed robbery, even when they suffered from medical conditions that increased their risk of experiencing severe COVID-19 symptoms. In so doing, the Court has emphasized the severity of the crime and the risk of recidivism. *See, e.g.*, *United States v. Curry*, No. 2:06-cr-11-JRS-CMM-1, dkt. 77 (S.D. Ind. May 20, 2020); *United States v. Clark*, No. 3:15-cr-28-RLY-CMM-1, dkt. 85 (S.D. Ind. Aug. 14, 2020); *United States v. Cox*, No. 1:16-cr-203-SEB-DKL-1, dkt. 65 (S.D. Ind. Feb. 10, 2021).

---

[6]This report is available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2019/20190124_Recidivism_Violence.pdf (last visited May 6, 2021).

In light of the above, the Court finds that releasing Mr. Schoonover early would not: reflect the seriousness of the offense; promote respect for the law; provide just punishment for the offense; afford adequate deterrence to criminal conduct; protect the public from further crimes; or avoid unwarranted sentencing disparities. Certainly, the Court is sympathetic to the risks that prisoners with underlying conditions such as Mr. Schoonover face from COVID-19, but it cannot find that the magnitude of those risks warrant releasing him from incarceration at this time. Likewise, the Court understands Mr. Schoonover's desire to help his parents and grandparents, but it cannot find that their need for care warrants releasing him from incarceration at this time. *See United States v. Saunders*, 986 F.3d 1076, 1078 (7th Cir. 2021) (affirming denial of motion for compassionate release where district court found that § 3553(a) factors weighed against release despite COVID-19 risk because defendant committed serious offense and had only served one-third of sentence); *United States v. Ebbers*, No. S402-CR-11443VEC, 2020 WL 91399, at *7 (S.D.N.Y. Jan. 8, 2020) (in evaluating a motion for compassionate release, the court should consider whether the § 3553(a) factors outweigh the "extraordinary and compelling reasons" warranting compassionate release, and whether compassionate release would undermine the goals of the original sentence).

### III.  Conclusion

For the reasons stated above, Mr. Schoonover's motions for compassionate release, dkt. [1] in Case No. 1:01-cr-156-JMS-TAB-01, and dkt. [1] in Case No. 1:02-cr-14-JMS-MJD-02, are **denied**.

**IT IS SO ORDERED.**

Date: 5/6/2021

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel